**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CESARIO GARCIA HERNANDEZ,      ) Case No. EDCV 14-2110-JPR
                               )
                Plaintiff,     )
                               )
          v.                   ) **MEMORANDUM OPINION AND ORDER**
                               ) **AFFIRMING COMMISSIONER**
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security,                      )
                               )
                Defendant.     )
_____)

**I.    PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision denying his applications for Social Security disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed October 13, 2015, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed.

1

**II.   BACKGROUND**

Plaintiff was born in 1958.  (Administrative Record ("AR") 115, 118.)  He has a marginal education, is able to understand limited English, and worked as a farm laborer (harvest worker), forklift driver, and shuttle driver.  (AR 134, 341, 343-44, 375-77.)

On June 2, 2010, Plaintiff filed claims for DIB and SSI (AR 115, 118), alleging that he had been unable to work since April 24, 2010, because of stroke, hypertension, and hyperlipidemia (AR 133).  After his applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge.  (AR 67.)  A hearing was held on December 1, 2011, at which Plaintiff, who was not represented, testified through a Spanish-language interpreter.  (AR 395.)  A vocational expert also testified.  (AR 407.)  In a written decision issued January 20, 2012, the ALJ found Plaintiff not disabled.  (AR 15-23.)  On November 7, 2012, the Appeals Council denied Plaintiff's request for review.  (AR 1.)  Plaintiff then sought review in this Court. On September 30, 2013, the previously assigned Magistrate Judge reversed the denial of benefits and remanded for further administrative proceedings.  (AR 433.)  On January 3, 2014, the Appeals Council remanded the case to the ALJ.  (AR 451.)

On April 10, 2014, a second administrative hearing was held, at which Plaintiff, who was represented by counsel, testified through a Spanish-language interpreter.  (AR 355.)  A medical expert and a vocational expert also testified.  (AR 360, 375.) On June 27, 2014, the ALJ again determined that Plaintiff was not disabled.  (AR 338-45.)  This action followed.

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

### IV. THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and his claim must be denied.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant

has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, he is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 24, 2010, his alleged onset date.  (AR 340.)  At step two, he concluded that Plaintiff had the severe impairments of "history of multi-infarct bilateral cerebellum and left occipital cortex of the left vertebral artery occlusion with no focal deficits (multiple strokes); hypertension; diabetes (with moderate control); early bilateral cataracts, homonymous hemianopsia, right eye; preproliferative diabetic retinopathy, bilaterally; and history of renal disease." (Id.)  At step three, the ALJ determined that Plaintiff's

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1 impairments did not meet or equal any of the impairments in the
2 Listing. (AR 341.) At step four, he found that Plaintiff had
3 the RFC to perform medium work with additional restrictions.
4 (Id.) Specifically, Plaintiff could lift, carry, push, and/or
5 pull 50 pounds occasionally and 20 pounds frequently. (Id.) He
6 could stand and/or walk for six hours and sit for six hours in an
7 eight-hour day. (Id.) He could understand limited English and
8 was precluded from work involving dangerous machinery,
9 unprotected heights, very fine vision, and driving. (Id.) Based
10 on the vocational expert's testimony, the ALJ concluded that
11 Plaintiff could not perform his past relevant work but could
12 perform jobs existing in significant numbers in the national
13 economy. (AR 343-44.) Accordingly, the ALJ found Plaintiff not
14 disabled. (AR 345.)

15 **V.   DISCUSSION**

16     Plaintiff claims that the ALJ erred in (1) rejecting the
17 opinion of a treating doctor, (2) assessing Plaintiff's
18 credibility, and (3) finding Plaintiff capable of performing
19 other work. (J. Stip. at 4.) For efficiency, the Court
20 addresses these issues in an order different from that followed
21 by the parties.

22     A.   The ALJ Properly Assessed Plaintiff's Credibility

23     Plaintiff contends that the ALJ failed to provide clear and
24 convincing reasons for discounting his credibility. (J. Stip. at
25 12-16.) For the reasons discussed below, the ALJ did not err.

26       1.   Applicable law

27    An ALJ's assessment of symptom severity and claimant
28 credibility is entitled to "great weight." See Weetman v.

Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment '[that] could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090,

7

1102 (9th Cir. 2014).   The ALJ may consider, among other factors,
(1) ordinary techniques of credibility evaluation, such as the
claimant's reputation for lying, prior inconsistent statements,
and other testimony by the claimant that appears less than
candid; (2) unexplained or inadequately explained failure to seek
treatment or to follow a prescribed course of treatment; (3) the
claimant's daily activities; (4) the claimant's work record; and
(5) testimony from physicians and third parties.   Rounds v.
Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as
amended); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.
2002).   If the ALJ's credibility finding is supported by
substantial evidence in the record, the reviewing court "may not
engage in second-guessing."   Thomas, 278 F.3d at 959.

## 2.   Relevant background

In an undated exertion questionnaire, Plaintiff wrote that
he had pain, nausea, fatigue, and "effects of medication." (AR
152.)   He could walk for one hour, grocery shop once a week,
sweep, mow the lawn, and drive for 10 minutes. (AR 152-53.)
Plaintiff felt fatigue after some of these activities but did not
have difficulty finishing his housework or other chores. (AR
152-54.)   He slept eight hours and needed a two-hour nap or rest
period during the day. (AR 154.)

In an undated "Disability Report – Appeal," Plaintiff
reported that his vision had improved since October 2010. (AR
159.)   He had trouble focusing on tasks but was able to perform
daily activities for short periods of time. (AR 159, 162.)   He
was unable to stand or walk for long periods. (AR 162.)

In a March 2011 "Disability Report – Appeal," Plaintiff

8

wrote that he was "unable to drive" because of a "blind spot" in his "visual field." (AR 169.)

Plaintiff appeared at the December 2011 hearing wearing sunglasses. (AR 400-01.) He testified that he could not work because he had suffered several strokes that affected his eyesight, brain, and mind. (AR 397.) Plaintiff did not wear prescription glasses. (Id.) He testified that vision in his left eye had been blurry for two years and his eyes were sensitive to wind and lights. (AR 397, 400-01). Plaintiff could drive for very short distances, such as to the grocery store or his children's football practice. (AR 400.) He could not drive at night, and the farthest he had driven in the previous year was two miles. (Id.) Plaintiff reported pain and numbness in his legs and hands and pain in his head, shoulders, and low back. (AR 398-99.) He stated that medication controlled his high blood pressure and that he sometimes mowed the lawn. (AR 399.)

At the April 2014 hearing, Plaintiff testified that he could not work because of vision problems and headaches. (AR 372.) He indicated that his vision had deteriorated "a little" over the last two years. (AR 370.) He claimed that everything was blurry, and there was an area in his field of vision in which he could not see anything. (AR 371.) He testified that he could not drive on the freeway or at night because he "can't see" if somebody comes from "the right side." (AR 372.) However, he was still able to drive on "familiar" streets. (Id.) Plaintiff stated that his vision problems did not affect his normal daily activities. (AR 371.) He also testified that he had pain in his shoulder and pain and numbness in his right arm, hand, fingers,

low back, legs, feet, and toes.  (AR 368-69.)  Plaintiff reported

that the problem in his lower extremities was "[a] little bit

better" with medication.  (AR 368.)  He could walk for 15 minutes

before needing to sit down.  (AR 372.)

        3.  <u>Analysis</u>

        The ALJ found that although Plaintiff's "medically

determinable impairments could reasonably be expected to cause

some of the alleged symptoms," his "statements concerning the

intensity, persistence and limiting effects of these symptoms"

were "not credible to the extent they are inconsistent with" the

ALJ's RFC assessment.  (AR 342.)  As discussed below, he provided

clear and convincing reasons for doing so.

        The ALJ permissibly discounted Plaintiff's subjective

complaints because "the allegations of severe pain and vision

problems are inconsistent with the claimant's admissions."[2]

(<u>Id.</u>)  As the ALJ pointed out, Plaintiff testified that

everything was blurry and he could not see things coming from his

right side (AR 371-72), and yet he admitted that he continued to

drive on public streets (AR 342, 372).  He also acknowledged that

his vision did not cause problems with his daily activities,

which included grocery shopping, sweeping, and mowing the lawn.

(AR 153, 342, 371.)  Although the Court previously found that

Plaintiff's "limited and sporadic daily activities were not

inconsistent with Plaintiff's subjective complaints of

impairment" (AR 440), Plaintiff subsequently reported more severe

_____

        [2] Plaintiff is thus incorrect when he asserts (J. Stip. at
16) that the ALJ did not identify which of his statements he
found not credible.

10

visual impairments (AR 370-72).  At the first hearing, he
testified that he had blurry vision in his left eye but "good"
vision in his right.  (AR 397-98.)  In contrast, at the second
hearing, Plaintiff claimed that in addition to blurred vision
there was an area in his field of vision on the right side that
was totally obscured.  (AR 371-72.)  Thus, the ALJ reasonably
found that Plaintiff's admissions about his daily activities,
including driving, conflicted with his allegedly debilitating
symptoms.  As such, the ALJ properly discounted Plaintiff's
credibility.  See Molina, 674 F.3d at 1112 (ALJ may discredit
claimant's testimony when "claimant engages in daily activities
inconsistent with the alleged symptoms" (citing Lingenfelter, 504
F.3d at 1040)).

     The ALJ also noted that Plaintiff admitted that medications
helped alleviate his symptoms.  (AR 342.)  At the second hearing,
Plaintiff testified that problems of pain and numbness in his
legs and feet had improved over the last two years with
medication prescribed by his doctors.  (AR 368.)  He stated that
his high blood pressure was controlled with medication.  (AR
399.)  The ALJ also noted that in November 2013, Plaintiff
reported that he was "feeling better."  (AR 342, 611.)
Plaintiff's doctor reported that Plaintiff was "happier" with
better controlled diabetes, resolving Vitamin D deficiency,
decreased insomnia, and no muscle cramps.  (AR 611.)  Thus, the
ALJ reasonably discounted the credibility of Plaintiff's
allegations of severe pain based on his positive response to
medication.  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d
1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled

effectively with medication are not disabling for the purpose of determining eligibility for" social security benefits); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain").

In sum, the ALJ provided clear and convincing reasons for finding Plaintiff only partially credible. Because those findings were supported by substantial evidence, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959. Plaintiff is not entitled to remand on this ground.

B.  The ALJ Properly Assessed the Physician's Opinion

Plaintiff contends that the ALJ erred in assessing the opinion of Dr. Michio Abe. (J. Stip. at 6-9.) For the reasons discussed below, remand is not warranted.

1.  Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. Id.

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen, 80 F.3d at 1285. If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in the record, it should be given controlling weight. §§ 404.1527(c)(2), 416.927(c)(2). If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

When a treating physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id. (citing Lester, 81 F.3d at 830-31). Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

          2.   Relevant background

Dr. Abe "interviewed" Plaintiff on April 17, 2014, and completed a physical RFC statement on April 24. (AR 625-28.) On the form, he filled in blanks diagnosing Plaintiff with ischemic stroke affecting the left occipital lobe, decreased vision secondary to homonymous hemianopsia in the right eye, cataracts, chronic low-back pain, type-two diabetes mellitus, hypertension,

13

1   and diabetic peripheral retinopathy.  (AR 625.)  Dr. Abe checked
2   a box indicating that Plaintiff was unable to work in a
3   competitive environment eight hours a day five days a week.  (AR
4   628.)  He opined that Plaintiff could sit for 30 minutes at a
5   time, stand for 30 minutes at a time, and walk for 15 minutes at
6   a time but could not walk one city block without rest or severe
7   pain.  (AR 626.)  In an eight-hour workday, Plaintiff could sit
8   for one hour, stand and walk for three hours, and needed
9   unscheduled breaks every hour.  (AR 627.)  He could lift and
10  carry 15 pounds rarely and 10 pounds occasionally.  (Id.)
11  Plaintiff was restricted to using his hands and fingers on the
12  right side 80 percent of the time and his right arm 50 percent of
13  the time.  (Id.)  He could not push and pull arm or leg controls
14  from a sitting position for six or more hours in a workday.  (AR
15  628.)  Dr. Abe opined that Plaintiff's attention and
16  concentration would be affected by pain constantly and stress
17  frequently.  (AR 625.)  Plaintiff would be off task more than 30
18  percent of the time and absent or unable to complete an eight-
19  hour workday five or more days a month.  (AR 628.)  Compared to
20  an average worker, Plaintiff would be expected to perform a job
21  efficiently on a sustained basis less than 50 percent of the
22  time.  (Id.)

23              3.   Analysis

24       The ALJ gave "little weight" to Dr. Abe's opinion that
25  Plaintiff "was limited to less than sedentary work and would miss
26  work more than five times a month" because the doctor relied on
27  Plaintiff's subjective complaints and did not cite objective
28  medical evidence.  (AR 343.)  Plaintiff argues that the ALJ did

                              14

not set forth sufficient reasons for rejecting Dr. Abe's "treating doctor" opinion.  (J. Stip. at 6-9.)

As a preliminary matter, it appears that Dr. Abe does not qualify as a treating source.  See §§ 404.1502, 416.902.  Dr. Abe saw Plaintiff on only two occasions.  (AR 625.)  He "interviewed" Plaintiff on April 17, 2014, and examined Plaintiff and completed the RFC statement five days later, on April 22.  (AR 625, 628.) Although Plaintiff claims that Dr. Abe was a treating physician, there is no objective evidence in the record that Plaintiff had an ongoing treatment relationship with Dr. Abe or that Dr. Abe was otherwise a treating physician.  See §§ 404.1502, 416.902. Indeed, Dr. Abe indicated that the "frequency and length of [his] contact" with Plaintiff was limited to those two meetings.  (AR 625.)  Therefore, Dr. Abe's opinion was not entitled to special weight.  But even if Dr. Abe did qualify as a treating physician, the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting his opinion.

The ALJ noted that Dr. Abe's findings "relied quite heavily" on Plaintiff's subjective report of symptoms and limitations and "seemed to accept uncritically as true, most if not all, of what the claimant reported."  (AR 343.)  That is a legally sufficient basis to reject his opinion, particularly given that the ALJ found that "there exist good reasons for questioning the reliability of claimant's subjective complaints."  (Id.; see supra Section V.A); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Because the present record supports the ALJ in discounting [claimant's] credibility . . . he was free to disregard [treating physician's] opinion, which was premised on

15

her subjective complaints."); <u>Tommasetti</u>, 533 F.3d at 1041 ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." (citation omitted)); <u>Fair</u>, 885 F.2d at 605 (finding that ALJ properly disregarded physician's opinion when premised on claimant's subjective complaints, which ALJ had already discounted).  Indeed, Dr. Abe's RFC statement reveals that he based his opinion in large part on Plaintiff's subjective complaints and self-reported history.  (AR 625-28.)  For example, in opining that Plaintiff was unable to walk one city block without rest or severe pain, he wrote that Plaintiff "states he has to rest when walking 1 block."  (AR 626.)  Dr. Abe also reported that Plaintiff had "constant pain in lower back 4-5/10 and occipital [headache] 6-7/10."  (AR 625.)  Finally, Dr. Abe cited his interview of Plaintiff as one of the primary sources of information for his opinion.  (AR 628.)

The ALJ also found that Dr. Abe's opinion was not supported by the objective medical evidence.  (AR 343.)  Although Dr. Abe listed a few alleged clinical findings — right-sided visual field loss in both eyes, tender lower back, positive straight-leg-raise test bilaterally, and decreased sensation in both feet (AR 625) — the record does not contain any lab reports, chart notes, or medical records from Dr. Abe to support such findings.  Dr. Abe also failed to offer any explanation as to how such findings would support the extreme limitations assessed or render Plaintiff unable to complete a normal workday five or more days each month.  (AR 627-28.)  The ALJ reasonably accorded less weight to Dr. Abe's conclusory statements of disability.  <u>See</u>

§§ 404.1527(c)(3), 416.927(c)(3); <u>Thomas</u>, 278 F.3d at 957;
<u>Batson</u>, 359 F.3d at 1195 ("an ALJ may discredit treating
physicians' opinions that are conclusory, brief, and unsupported
by the record as a whole . . . or by objective medical
findings").

    Further, the contradictory opinion of the examining
physician, which was accorded "significant weight" by the ALJ,
provided a specific, legitimate reason for rejecting Dr. Abe's
opinion. (AR 342-43.) Dr. Sarah L. Maze completed a
neurological evaluation of Plaintiff on November 30, 2010. (AR
256-59.) Plaintiff denied loss of strength, difficulty with
coordination, or changes in memory. (AR 256.) Plaintiff
reported that he walked daily 20 to 25 minutes for exercise. (AR
256, 258.) Plaintiff's neurological examination was generally
unremarkable. (AR 256-57.) His concentration was not impaired,
his speech was without dysarthria or aphasia, visual fields were
full to confrontation testing, grip strength was 40/40/40
bilaterally, motor function was 5/5 throughout, sensation was
intact, coordination was coarsely slow on the right and slightly
slow on the left, and ambulation was very stable. (AR 257-58.)
Dr. Maze diagnosed Plaintiff with a history of multiple strokes
and opined that Plaintiff could push, pull, lift, and carry 50
pounds occasionally and 25 pounds frequently, stand and walk for
six hours in an eight-hour day, sit for six hours in an eight-
hour day, and perform fine motor activities with his hands and
legs. (AR 258-59.) Dr. Maze's opinion was supported by her
independent examination of Plaintiff and thus constituted
substantial evidence upon which the ALJ could properly rely to

17

reject Dr. Abe's opinion.  See Tonapetyan, 242 F.3d at 1149
(finding that contrary opinions of other physicians "serve[d] as
additional specific and legitimate reasons for rejecting" certain
physicians' opinions); Andrews v. Shalala, 53 F.3d 1035, 1041
(9th Cir. 1995).  The opinions of the state-agency medical
consultants and the testifying medical expert also constituted
substantial evidence supporting the ALJ's decision as they were
consistent with Dr. Maze's opinion and underlying independent
examination and the other medical evidence of record.  See
Tonapetyan, 242 F.3d at 1149 (holding that opinions of
nontreating or nonexamining doctors may serve as substantial
evidence when consistent with independent clinical findings or
other evidence in record); Andrews, 53 F.3d at 1041 ("reports of
the nonexamining advisor need not be discounted and may serve as
substantial evidence when they are supported by other evidence in
the record and are consistent with it"); Morgan v. Comm'r, Soc.
Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (testifying
medical-expert opinions may serve as substantial evidence when
"they are supported by other evidence in the record and are
consistent with it").

Accordingly, Plaintiff is not entitled to remand on this
ground.

C.   Any Error in the ALJ's Determination that Plaintiff
Could Perform Certain Jobs Was Harmless

Plaintiff contends that the ALJ erroneously relied on the
VE's testimony to find that he was capable of performing
alternative work because the combination of his impairments and
RFC precluded the performance of such jobs.  (J. Stip. at 19-20.)

18

For the reasons stated below, however, reversal is not warranted on this ground.

### 1.   Applicable law

At step five of the five-step process, the Commissioner has the burden to demonstrate that the claimant can perform some work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c). The Commissioner may satisfy that burden either through the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. part 404, subpart P, appendix 2. Tackett, 180 F.3d at 1100-01; see also Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012). When a VE provides evidence about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that evidence and the Dictionary of Occupational Titles. See SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000); Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (holding that application of SSR 00-4p is mandatory). An ALJ's failure to do so is procedural error, but the error is harmless if no actual conflict existed or the VE provided sufficient evidence to support the conclusion. Massachi, 486 F.3d at 1154 n. 19.

### 2.   Relevant background

At the hearing, the ALJ instructed the VE to alert him if his testimony deviated from the DOT, and he stated that he would. (AR 375.) The VE testified that a person with Plaintiff's limitations could perform the jobs of "harvest worker," DOT

19

403.687-018, 1991 WL 673307,[3] "landscape worker," DOT 406.687-010, 1991 WL 673342,[4] and "hand packager," DOT 920.587-018, 1991 WL 687916.  (AR 380.)  In his written decision, the ALJ noted that the VE's testimony was "consistent with the information contained in the [DOT]" and concluded, "[b]ased on the testimony of the [VE]," that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (AR 345.)  The ALJ therefore found that Plaintiff was not disabled.

### 3.  Analysis

Plaintiff contends that the ALJ erred in relying on the VE's testimony that he was "capable of performing three medium occupations given the combination of his insulin dependent diabetes mellitus which has never been under good control, his state III kidney failure, and his visual limitations."  (J. Stip. at 19 (citations omitted).)  However, Plaintiff does not explain how these impairments would preclude that other work, nor does he challenge the accuracy of the hypothetical presented to the VE. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ could rely on testimony of VE when hypothetical contained all limitations that ALJ found credible and supported by substantial evidence).

Next, Plaintiff argues that the ALJ erred in relying on the VE's testimony because the requirements of the three jobs

---

[3] The ALJ and VE also referred to this position as "farm laborer."  (AR 345, 375.)

[4] The DOT describes this position as "landscape specialist." DOT 403.687-018, 1991 WL 673307.

identified exceed the limitations outlined in his RFC.  (J. Stip. at 19-20.)  First, Plaintiff asserts that the harvest-worker and landscape-specialist jobs require "climbing of ladders," which is precluded by his restriction from working at unprotected heights.  (Id. at 19; AR 341.)  Plaintiff's argument lacks merit.  Although both jobs require climbing, the DOT expressly states that working at high exposed places is not required for either job.  DOT 403.687-018, 1991 WL 673307 ("High Exposed Places: Not Present — Activity or condition does not exist"); DOT 406.687-010, 1991 WL 673342 (same).  Thus, Plaintiff's restriction against working at unprotected heights did not preclude climbing a ladder or the performance of these jobs.  Indeed, ALJs routinely expressly preclude ladder climbing when that is what they mean.  See, e.g., Chaudry v. Astrue, 688 F.3d 661, 667 (9th Cir. 2012) (noting that ALJ found that plaintiff was "unable to climb . . . ladders"); Kopeke v. Comm'r of Soc. Sec. Admin., 490 F. App'x 864, 866 (9th Cir. 2012) (noting that ALJ precluded plaintiff from "climbing ladders").

Third, Plaintiff argues that the landscape-specialist job requires more than his limited English and educational background because it encompasses "a GED language skill level of 2."  (J. Stip. at 19.)  A job's GED level pertains to, among other things, the language development necessary to perform it, including reading, writing, and speaking.  DOT app. C - Components of the Definition Trailer, 1991 WL 688702.  A language development level of two requires a "[p]assive vocabulary of 5,000-6,000 words" and the ability to "[r]ead at rate of 190-215 words per minute"; "[r]ead adventure stories and comic books, looking up unfamiliar

21

words in dictionary for meaning, spelling, and pronunciation";
"[r]ead instructions for assembling model cars and airplanes";
"[w]rite compound and complex sentences, using cursive style,
proper end punctuation, and employing adjectives and adverbs";
and "[s]peak clearly and distinctly with appropriate pauses and
emphasis, correct pronunciation, variations in word order, using
present, perfect, and future tenses." Id.; DOT 403.687-018, 1991
WL 673307.  The ALJ found that Plaintiff was able to "understand
limited English," had a "marginal education," and was "able to
communicate in English." (AR 341, 344.)  At the hearings,
Plaintiff testified with the assistance of a Spanish-language
interpreter. (AR 355, 395.)  It appears that the landscape-
specialist requirement for level-two GED language-development
skills might be incompatible with Plaintiff's limited ability to
understand English.  Because the VE failed to explain the
apparent conflict between the DOT and his testimony, the ALJ's
determination that Plaintiff could perform the landscape-
specialist job may not have been supported by substantial
evidence. See Massachi, 486 F.3d at 1153; SSR 00-4p, 2000 WL
1898704, at *4.

Finally, Plaintiff contends that the hand-packager job was
also precluded because it "is clearly a fast paced occupation
utilizing a conveyor belt and/or assembly line." (J. Stip. at
19); DOT 920.587-018, 1991 WL 687916.  Although Plaintiff implies
that work as a hand packager is incompatible with his restriction
from working with dangerous machinery (J. Stip. at 19), in fact
the DOT states that the hazard of "[m]oving [m]echanical [p]arts"
is "[n]ot [p]resent" and "does not exist." DOT 920.587-018, 1991

22

1   WL 687916.   Thus, no conflict existed between the DOT and the

2   VE's testimony that Plaintiff could perform the hand-packager

3   job.

4        In sum, any error in the ALJ's finding that Plaintiff could

5   perform the landscape-specialist position was harmless because

6   his finding that he could do the hand-packager and harvest-worker

7   jobs was supported by substantial evidence and free of legal

8   error.   See Molina, 674 F.3d at 1115 (ALJ's error harmless when

9   "inconsequential to the ultimate nondisability determination"

10  (citation omitted)).

11       Plaintiff is not entitled to remand on this ground.

12  **VI.   CONCLUSION**

13       Consistent with the foregoing, and under sentence four of 42

14  U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered

15  AFFIRMING the Commissioner's decision, DENYING Plaintiff's

16  request for remand, and DISMISSING this action with prejudice.

17  IT IS FURTHER ORDERED that the Clerk serve copies of this Order

18  and the Judgment on counsel for both parties.

19

20  DATED: February 29, 2016        _Jean Rosenbluth_____

21                                  JEAN ROSENBLUTH
                                    U.S. Magistrate Judge

22

23

24

25  _____

26       [5] That sentence provides: "The [district] court shall have
    power to enter, upon the pleadings and transcript of the record,
27  a judgment affirming, modifying, or reversing the decision of the
    Commissioner of Social Security, with or without remanding the
28  cause for a rehearing."